Good morning, Your Honor. May it please the Court, Mark Poster on behalf of Appellant Frank Dufour, and I'm here with co-counsel Andrew Kulik. I'd like to address three major points. This is about the attorney's fees awarded by the trial court. The fees should have been denied entirely because the moving party failed to prove that there was a statute or a contract that allowed for fees. Even if there was a contract, which Mr. Dufour denies, the agreement does not authorize an award of fees for litigation between the parties. And even if the defendants were entitled to some fees, the trial court abuses discretion in awarding almost all the fees for the entire litigation when practically none of the fees related to the so-called written contract. So talking about whether there was a fee agreement, no court has ever found there was one in this case. Defendants file a cross-complaint that alleged there was an enrollment agreement. That's the document they're relying on. But the district court, in preventing your client from demonstrating that there was no agreement, by operation of law, it found that he was a party to the agreement. Isn't that how the case gets to the court of appeals? The district court, I'm sorry, could you say that again? Your client did not have an opportunity to present evidence that he was not a party to the enrollment agreement. He had never signed the enrollment agreement. Correct. And that was a decision as a matter of law. Isn't the result or consequence that flows from that decision that the court found, and we must accept from that point of view, that he was a signatory to the agreement? That's not what the, I don't believe the district court ever said that. I think the district court thought, well, at one point you file a cross, cross, cross complaint that mentioned the enrollment agreement, and therefore you're a stop to claim there wasn't an agreement. But that is a matter of law. That is incorrect for a variety of reasons. Well, it may be. But as the case comes up, it seems to me that what we have before us was a decision at the trial court level that he is a signatory to the agreement. Well, okay. If that's how you read what the district court said, then my argument is that that is just flatly wrong. Right. Okay.  I'm not agreeing at all that he signed this agreement. I understand that. He has absolutely denied that he ever executed this agreement. The defendants at one point tried to move for arbitration of his complaint based on the enrollment agreement. So let me ask you this. Yes. In light of that, what you're seeking then is to have the case remanded so that the court finds that the application of judicial estoppel was improper in this case, and the case should be remanded to the district court? Well, no. Yes, it should be remanded. But it should be remanded with directions to say you don't get attorney's leave. They've had their opportunity to prove that there was a written contract multiple times, and they haven't done it. And they've just asserted that he signed the contract. And they do it in their briefs on appeal, but there's no record sites there because there is no such evidence that he ever signed it. He's consistently denied it. And they had their chance, and I don't see why they would get another chance to try to prove something. Now, let me ask you this about the signing of the agreement. This was the enrollment agreement was drafted by whom? By the defendants. Okay. And it was arguably consented to by clicking something online? That's their argument. Okay. And was there any offer? Did the plaintiff ever had a counteroffer or suggested any modification, or he simply accepted the agreement in total? He has no recollection of accepting anything on that. Did he ever propose anything? No. He sent in some money, and he got some books and a training course. Okay. That was it. Okay. And then he sued for fraud after he pursued these real estate investments? Yes, he was suing for fraud. Okay. But all those claims were dismissed under the statute of limitations? Yes. Okay. And so the attorney's fees are awarded based on the counterclaim by one set of defendants, right? Apparently so, except they dismissed their counterclaim, voluntarily dismissed it. So you don't get attorney's fees when you voluntarily dismiss your claim. And then the sole basis of their claim for fees is the allegations in your cross-complaint? Cross-complaint. Cross-cross, I guess it's what you're – to their counterclaim. It's their – yes, he filed an affirmative answer to their – Okay. But when he did that, he said, this is the alleged agreement. If you're going to sue me on the agreement, it's an alleged agreement, and if I'm going to get held to an alleged agreement, then I have claims too. But that's all he said. That's what his cross-complaint was. He never wanted to sue on the written contract. He denied he ever participated in that. Wait, who's he? DeVore? I'm sorry. You're saying he. You're talking about DeVore? He, Mr. DeVore, Dr. DeVore. I have a question. And for the purpose of this question, I want you to assume that there was an agreement. Yes. The enrollment agreement states that it is governed by the laws of Utah. And if there is an agreement, what effect does that choice of law provision have on our interpretation of the scope of the agreement to indemnify and pay attorney fees? Well, the district judge decided that really California law would apply because that's what everybody on both sides had been arguing here. But why? Well, I don't believe that the law is any different when it comes to interpreting contracts. Well, that may be the right answer, but I actually don't know the answer to what Utah law says. I think in my brief I cited a Utah case that basically had the same principles that California law does when it comes to interpretation of contracts. Your issue is, I think that if we get to the second issue, is the scope of the indemnity agreement, any and all claims. How do you address that? Assuming that there was an agreement. Okay, yes. Right, right. That's my second point. And that is that if you read, there's an arbitration clause in that enrollment agreement. And it says, when you go to arbitration, the parties shall pay their own fees. So that's where, you know, that kind of gets you to where you want to be. If you're suing on this contract, the parties pay their own fees. The indemnity clause, ordinarily indemnity has to do with third-party claims. You hold us harmless if we get sued by some third party. It's ordinarily not between, unless it explicitly says so, indemnity doesn't get you attorney's fees in a lawsuit between the parties to the indemnity clause. And the clause here is just a lot of gobbledygook. But whatever it says, it doesn't say, and for sure if there's a litigation between us, you're going to pay our attorney's fees and the damages that you get against us. That would just, that wouldn't make any sense at all. The indemnity says all damages, liability costs, losses, expenses. It can't be any broader than that. Well, yeah, but from what? And the answer to that is from a third party. That's the natural understanding of indemnity, and there's nothing in here that would suggest that the parties intended something different than that, especially in light of that arbitration clause. I'm going to run out of time, so my third point has to do, assuming everything else, the judge awarded $326,000 in attorney's fees, I submit that's an abuse of discretion because that covered virtually everything in the lawsuit from beginning to end. And whatever there was that may have had something to do with the enrollment agreement, let's assume that the cross-cross complaint somehow raised the enrollment agreement. That was just a sideshow in this lawsuit. And for all the other torts and fraud and everything else that's being alleged, that's not covered by the enrollment agreement. I'd like to save my last few minutes unless the Court has other questions. You may do that. All right, thank you. Good morning, Your Honors. I'm Kelly Nash on behalf of the Prosper defendants. It's a pleasure to be before this Court. I appreciate the questions that have been asked, and I'll try to address those in turn in my remarks. May it please the Court, the only and the central questions that are properly before this Court is whether or not the district court abused its discretion in concluding that Prosper was entitled to, actually, $385,000 in attorney's fees approximately under the plain language of the subject enrollment agreement indemnity clause. To better understand the limited questions that are before the Court, I believe a brief review of the procedural history and the law of the case doctrine would be very helpful. Then I'd like to address the questions that perhaps were raised in the opening argument concerning the enrollment agreement and the record support for its existence, as well as then any question concerning abuse of discretion in awarding fees and any concern about the interpretation of the indemnity clause. Well, one question there. Isn't the entitlement to attorney's fees a question of law that is reviewed de novo? That is correct, Your Honor. Okay. Well, how do you factor that in with the ‑‑ I thought you said that the award of attorney's fees was an abuse of discretion. The award of fees in terms of calculating the amount. Oh, the calculation, okay. Following the Lodestar formula, et cetera, that is an abuse of discretion, but interpreting the indemnity clause, its scope, the language would be a de novo review for Your Honors. On November 21, 2014, and this is very important, the District Court dismissed the initial cross‑cross complaint, finding that DeFore was equitably a stop from denying the enforceability of the enrollment agreement. Significantly, Mr. DeFore, Dr. DeFore, appealed that dismissal of the cross‑cross complaint because he sought to maintain a breach of contract claim against the prosper defendants under the enrollment agreement for, among other things, his attorney's fees. His initial appeal was therefore premised upon his belief that the enrollment agreement existed and was enforceable. Indeed, there would be no other reason for him to have appealed the dismissal of his cross‑cross complaint. DeFore's appeal was unsuccessful, as the Court is aware, and this Court affirmed the District Court's dismissal of the cross‑cross complaint, validating expressly and or implicitly the enrollment agreement, its existence, and its enforceability. Though not detailed in this Court's February 22, 2017 memorandum decision, the Ninth Circuit reviewed and affirmed the District Court's dismissal of the cross‑cross complaint and implicitly recognized that DeFore had waived his claims against Prosper under the enrollment agreement. Following that appeal, and consistent with the law of the case that was established by the Court's ruling in the initial appeal, Prosper petitioned the District Court to review the subject indemnity clause and to award the attorney's fees, which largely arose as a result of defense of a fraud claim, a tort claim, rather than a contract claim. DeFore took the position, which was different from the position that he had taken in his cross‑cross complaint at that time and said, no, the enrollment agreement doesn't exist. It's never been determined to be enforceable. Very importantly, the District Court, in its May 22, 2017 ruling, granting attorney's fees, reiterated its prior view that it had expressed when it dismissed the cross‑cross complaint initially, and it stated very emphatically, the Court has already concluded that DeFore is a stop from denying the enforceability of the enrollment agreement because he attempted to enforce his rights under that agreement when he filed his cross‑cross complaint. I would add that he is further stopped from denying the existence and enforceability of that agreement because he pursued an appeal on that precise issue. Therefore, notwithstanding that the speculative fraud conspiracy theories were never proven, any asserted or unasserted issues relating to that cross‑cross complaint and his claim for breach of contract under the enrollment agreement cannot be properly reconsidered by this Court under the law of the case doctrine in what is really a second and unrelated appeal on really the scope of the indemnity clause and the award of attorney's fees. And I don't think this Court has to even entertain any question concerning the existence. My concern really is what do we make out of the arbitration clause which says that claims against each other, direct claims, each side will bear their costs and the attorney's fees. How does that all fit in here? Great question, Your Honor. There are two provisions in the contract that arguably might come into play. An arbitration clause which was never invoked because of a waiver of that arbitration right when Dr. DeFore filed in civil court consistent with the dismissal of his claim as found by the district court. But there is a separate provision, the indemnity provision, and these run in tandem. And the indemnity language is very important and it goes right to the heart of the question you asked earlier. In that indemnification section, it says that, referring to your language, that Dr. DeFore is going to indemnify from all damages, all expenses, costs, et cetera, including attorney's fees. And in Section 2 it says arising from or resulting from the breach of the user, the breach of Dr. DeFore. That's a direct claim. And it goes on to identify the breaches of his obligations, his duties under the agreement. And then it goes on, and claims of injury or otherwise arising from the sales of any products or services pursuant to this enrollment agreement. Okay? That's on page 4 of that rather, it's an electronic. So you're saying that if he had triggered the arbitration agreement, then there wouldn't be any attorney's fees? But the fact that he didn't trigger the attorney's fees, the arbitration agreement, then you're entitled to attorney's fees? Is that your argument? Yes, I think, in part, yes, that's correct. Why have the indemnification clause at all? Because essentially what you're saying is you don't have any claims against us at all, unless they're claims that are brought pursuant to arbitration. Let me just say this. We have an agreement, and you're saying this agreement, this hypothetical agreement, has an indemnification clause that if I sue you for breaching the agreement, and it's determined that you owe me money, that this indemnification clause says, well, I have to indemnify you for the money that you owe me. So why isn't it just tantamount to saying you can't sue me other than through this arbitration clause, if that's how you interpret it? Well, the court certainly has discretion in applying the indemnity language and in determining prevailing party status and the award of fees, and within the scope of the indemnity clause, there must be. That's not an answer to my question. My question is what you're saying, you might as well, instead of having this indemnification clause, if it covers claims between the contracting parties, you're essentially saying they can't sue you other than they don't have a claim against you other than through the arbitration clause. Because if they have to indemnify you for any sums that might be awardable to them for suing you, why sue you at all? Well, the agreement, I'll acknowledge there's some interesting interplay between these two. No, it means it doesn't make any sense, really. Well, the fact is if there's an arbitration initiated by Dr. DeFore, he has the right not to have to pay attorney's fees. If, on the other hand, he sues in civil court and he waives those rights. Why sue? Why even sue if he has to indemnify you for any amounts he would recover from you? Well, if he prevails in the civil action, he's entitled to attorney's fees under this agreement as well based on the mutuality doctrine. So he has the benefit of that argument. We seem to have, and your argument seems to focus, and I think the questions from the panel, on the fact that the agreement either doesn't make any sense or is legally ambiguous. Now, you drafted the agreement. Why, if it's legally ambiguous, shouldn't we construe that against your client who put these words to paper? And if the evidence is equipoise or is ambiguous, why wouldn't you lose the case? Prosper did, in fact, draft the agreement. So I think your point is valid that it is construed against them to the extent of an ambiguity. I don't know that we can say that the contract is ambiguous in the sense that we can't make heads or tails out of it. The two provisions, the arbitration provision and the indemnification provision, seem to overlap or be in tension. Would you agree with that? Well, I think there is some overlap, but it's not a complete overlap, and I don't think that they're mutually exclusive. That is to say, as I tried to indicate earlier, is Dr. DeFore could have sued and he could have arbitrated. It's very clear what would have happened in that situation. He chose not to do so. He didn't mediate, he didn't arbitrate, and he waived those rights according to the district court. We have a freestanding indemnity clause that also addresses attorney's fees in the event of a breach by Dr. DeFore or claims that arise and injuries and losses that arise independent that relate in any way to the sales of the products or services. That is still a valid and enforceable provision according to the plain language of the agreement. And they can be reconciled in the way that the district court reconciled them. There was no arbitration. There was no mediation. He elected not to pursue those claims. We could get into the reasons for that, but I don't think that's really before this panel. The fact of the matter is we still have a clear and pretty straightforward plain language that says if there are losses or damages between these parties pursuant to this agreement in the sales of the products or services, Dr. DeFore must indemnify if PROSPER prevails as it did in this case. And, again, based on the mutuality doctrine, the converse would be true. That's why he sued for attorney's fees in the cross-cross complaint. So it's not as big of a problem as it might initially appear, but I don't defend the contract as the greatest written document in the world, certainly. It's got some interesting, you know, inconsistencies within it. But if you look at it that way and you try to give meaning to the entirety of the document, I think that's how you can get there. Are there any other sections of the enrollment agreement other than the arbitration clause which shed some light on the interaction of these two provisions that we can look at as in some of the other California cases? I think the place that I was able to find assistance as I looked through it was if you look at the obligations of Dr. DeFore Those are specified in fairly good detail following the core of the indemnity provision. So, for example, he made certain commitments. He understood that PROSPER didn't guarantee his success. He was responsible for all of the financial decisions that he made regarding any investment. He understood that we, PROSPER, were making no recommendations whatsoever concerning his real estate investment practices following the real estate course, that he also was responsible to seek legal and financial advice or professional advice in connection with any investment decision. Yet he sued us on those very issues. He failed in the record to, in fact, make his own decisions, and he tried to put that off on PROSPER. So he clearly breached the agreement, and that was the basis upon which we sued for the indemnity and the attorney's fees as granted by the district court. It's important to say that the district court's decision in dismissing the Cross Cross complaint involved implicitly a recognition of the existence and the enforceability of the enrollment agreement. That is, DeFore could only waive arbitration rights and claims under the enrollment agreement if that enrollment agreement existed and was enforceable. So that's really my last point on law of a case. What about the voluntary dismissal of the Cross claim, I guess you would call it? What goes with the voluntary dismissal? Are you surrendering any rights by doing so? You may, under California law, be said to surrender contract claim-related rights, but not tort-related rights. This is predominantly a fraud claim. Ninety-nine percent of all the fees were attributable to the fraud claim. And so on that basis, no. Finally, I would urge the court— Even though you're basing the recovery on the provision in the enrollment agreement, which is a contract, you're saying that this is really a tort claim? California law recognizes that fraud claims that arise in the context of contract indemnity provisions can result in an award of fees. One thing that's also, I think, important to note that really was, I think, overlooked perhaps in the briefing is that PROSPER asserted in both of its answers to the Third Amendment complaint and the Fourth Amendment complaint a request for fees specifically under that agreement. So whether the cross-complaint was asserted or not, the request for fees was properly before the Court, and the Court had at issue the enrollment agreement, which was a large part of the defense of PROSPER throughout the pleadings. If I might refer the Court just in the final minute that I have, the record is very clear in terms of Dufour's admissions concerning the e-signature execution, if you will, of the enrollment agreement. There are three sources that the district court looked at. Dufour's deposition testimony in which he said, I don't recall the enrollment process. He didn't say he didn't sign it. He said, I don't recall it. In fact, in the Sherman letter, a very important document, and it is P-043, I believe. In the Sherman letter, which occurred five years prior to his filing of the cross-cross or filing of the original complaint in this action, he says, he expressly admitted that he and his wife, quote, signed up for the PROSPER program. We now see for the first time, I see my time is, may I finish my question? Yes, you may wrap up briefly. Okay. We see now for the first time in this case an argument that there's an implied in fact contract. Well, that phrase never existed in the lower court proceedings. They conveniently have argued back and forth, oh, it didn't exist, it didn't. Five years before any of this happened, he admits himself that they signed up for an agreement. Hardly an implied, in fact, we have the enrollment agreement, and the record of the transcript and the audio and Dr. Dufour's review of all that clearly says that the PROSPER folks confirmed he signed it, he delivered it, they received it, and they finished the enrollment process. Thank you, counsel. Thank you very much. Well, with regard to the very last point, we filed a request for judicial notice which has been granted, and one of the things was page P065 of the defendant's excerpts, and Dr. Dufour testifies, the reason I can say I've never seen the enrollment agreement because he just doesn't recognize it, the font's too big, I would have recognized it. He's testifying in his deposition that I never saw this enrollment agreement. Counsel talks about the indemnity clause, and he says it's between the parties. Well, you won't find the word between the parties, the words between the parties in the indemnity clause. You just won't. And I don't understand what point, why would the defendant sue Dr. Dufour on the enrollment agreement because we took his money and gave him his course, and then he didn't follow through. What kind of a lawsuit is that? So they dismissed it. The only reason that there's a cross-complaint in this is that that's what you do to preserve your rights when somebody sues you on a written contract, at which point there's a four-year statute of limitations and not a two- or three-year statute of limitations, which is the earlier claims got dismissed because it wasn't on a written contract. He wasn't suing on a written contract. Counsel talks about an implied finding of estoppel that was somehow affirmed on the prior appeal, and honestly, I don't know what implied finding that was. I thought his cross-complaint was thrown out because the district court thought that there was some kind of primary rights theory, that he couldn't bring another lawsuit after he'd already filed his original lawsuit. I point out that the defendants, if they thought there was a written agreement with an arbitration clause, they could have arbitrated this, too, if they wanted to, but they didn't. They chose not to. They filed a motion, and then they couldn't prove there was an agreement. So that was the end of it. I think I've covered all of those points. Does the Court have any more questions on anything that you've heard? I don't believe that we do. All right. Well, thank you very much. Thank you. The case just argued is submitted. We appreciate the arguments of both counsel.
judges: Wardlaw, Graber, Robreno